Steven R. Sumsion (#8317)
**SUMSION BUSINESS LAW**
3651 N. 100 E., Suite 300
Provo, Utah 84604
Tel: (801) 375-2830
Email: steve@businesslawutah.com

*Attorney for Plaintiff*

## IN THE THIRD JUDICIAL DISTRICT COURT
## FOR THE STATE OF UTAH

| | |
|---|---|
| **MATTHEW GARCIA-BENGOCHEA,** an individual,<br><br>         Plaintiff,<br><br>v.<br><br>**UTAH DEPARTMENT OF CORRECTIONS**, a governmental entity; **SALT LAKE CITY, CORP.**, a governmental corporation; **MIKE BROWN**, in his individual and official capacity; **ROLLIN COOK**, in his individual and official capacity as former Executive Director of Utah Department of Corrections, **BRIAN NIELSON**, in his individual and official capacity as former Executive Director of Utah Department of Corrections, **OFFICER ARCHULETA**, an individual; **OFFICER DOES 1-10**, individuals,<br><br>         Defendants. | **COMPLAINT**<br><br>**(TIER III)**<br><br>**Jury Trial Demanded**<br><br>Case Number:<br><br>Judge: |

COMES NOW, Plaintiff Matthew Garcia-Bengochea ("Garcia-Bengochea"), an individual, by and through counsel of record, hereby complain against the above-named Defendants—Utah Department of Corrections, Salt Lake City, Corp., Mike Brown, Rollin Cook,

Brian Nielson, Officer Archuleta, and Officers Doe 1-10 (collectively "Defendants")—and alleges as follows:

## INTRODUCTION

On August 18, 2017, Garcia-Bengochea was surrounded by three law enforcement officers outside a motel in Salt Lake City, Utah. The officers began shouting at Garcia-Bengochea. Fearful of the demeanor of the officers, Garcia-Bengochea asked if he was under arrest. The officers responded that he was not under arrest. Thus, believing that he was not being detained, Garcia-Bengochea announced that because he was not under arrest, he was going to walk away. Garcia-Bengochea hopes to de-escalate the situation. Garcia-Bengochea then slowly turned away from the officers and began walking away.

With no warning whatsoever, one of the officers tased Garcia-Bengochea from behind. Garcia-Bengochea fell to the ground, at which point the three officers again surrounded him. One officer lifted Garcia-Bengochea off the ground before forcefully body slamming Plaintiff into the ground face first. The remaining officers proceeded to kick, knee, and otherwise brutalize Garcia-Bengochea until he was rendered fully unconscious. He is unsure if the beatings continued on his unconscious body.

Garcia-Bengochea awoke 30-40 minutes later at the LDS Hospital, in Salt Lake City. This vicious attack left multiple complex fractures across a number of different bones in Garcia-Bengochea's face and skull. These injuries have caused serious, permanent damage to Plaintiff.

Garcia-Bengochea is currently unable to identify with precision the three officers involved. This is due to two primary reasons: (1) the officers had arrived in an unmarked vehicle and attacked him from behind, making it difficult for Plaintiff to identify what entity the officers worked for and (2) a GRAMA request that was made on behalf of Garcia-Bengochea seeking,

inter alia, the names of the officers, was summarily denied. *See* **Ex. A**; **Ex. B**. The State erroneously argued that Garcia-Bengochea needed to produce a court order or subpoena before the state would issue any documents related to this incident. *Compare* **Ex. C** *with* Utah Code § 63G-2-202(4). The State's unfounded requirement has limited Garcia-Bengochea's ability to identify his attackers and which government entity they were and/or are affiliated with. Still, Garcia-Bengochea brings suit in good faith, hoping to determine the identify of his attackers through the discovery process.

## PARTIES

1. At all relevant times, Plaintiff Garcia-Bengochea was a resident or was physically present in Salt Lake City, Utah.

2. At all relevant times, Defendant Utah Department of Corrections was a governmental entity organized and existing under the laws of the State of Utah.

3. At all relevant times, Defendant Salt Lake City, Corp. was a governmental corporation organized and existing under the laws of the State of Utah.

4. At all relevant times, Chief Mike Brown was the Chief of Police for the Salt Lake City Police Department ("SLCPD").

5. At all relevant times, Rollin Cook was the executive director of the Utah Department of Corrections.

6. Brian Nielson is the current executive director of the Utah Department of Corrections.

7. Upon information and belief, at all relevant times, Defendant Officer Archuleta was a law enforcement officer with the SLCPD or the Utah Department of Corrections.

8. At all relevant times, Defendants Officers Doe 1–3 were law enforcement officers with the SLCPD or the Utah Department of Corrections.

## JURISDICTION AND VENUE

9. This Court has jurisdiction pursuant to Utah Code § 78A-5-102.

10. Venue is proper in this Court pursuant to Utah Code § 78B-3-302.

## GENERAL ALLEGATIONS

11. On August 18, 2017, Garcia-Bengochea was in the parking lot of the Econo Lodge in Salt Lake City, Utah.

12. While there, an unmarked sedan pulled into the parking lot.

13. Three police officers emerged from the sedan and surrounded Garcia-Bengochea.

14. The officers surrounding Garcia-Bengochea were Officers Archuleta and/or Doe 1-3.

15. The officers did not identify themselves by name or state their from which department they came.

16. The officers contradictorily stated that they knew who Garcia-Bengochea was, while asking Garcia-Bengochea to identify himself.

17. Garcia-Bengochea asked the officers if he was under arrest.

18. The officers responded that Garcia-Bengochea was not under arrest.

19. Garcia-Bengochea then responded that he was exercising his right not to talk with the police and that he would be leaving.

20. Garcia-Bengochea reasonably believed that he was not being detained, as the officers had stated that he was not under arrest.

21. Garcia-Bengochea turned away from the officers, and began walking away, in an attempt to de-escalate this police encounter.

22. While Garcia-Bengochea was walking away, one of the officers pulled out his or her taser and shot Garcia-Bengochea with said taser.

23. None of the officers had ordered Garcia-Bengochea to stop, nor did they warn him of the impending taser attack.

24. The taser attack amounted to excessive force, because Garcia-Bengochea was only walking away based on representations of the officers that he was free to go.

25. The taser attack by the officers caused Garcia-Bengochea to lose control of his muscles, which resulted in Garcia-Bengochea falling down, unable to stand.

26. Garcia-Bengochea was effectively detained by the taser, despite the fact that he had been told by the officers that he was free to go.

27. However, despite the fact that Garcia-Bengochea was already detained, Officer Doe 1 picked Garcia-Bengochea up off of the ground before forcefully driving Garcia-Bengochea's limp body back into the ground face first.

28. After Garcia-Bengochea had been slammed face first into the ground by Officer Doe 1, Officers Doe 1-3 gathered around Garcia-Bengochea and began kicking him in the head, arms, and chest.

29. Finally, Officer Doe 2 dropped his or her knee onto the side of Garcia-Bengochea's head, resting his or her body weight on Garcia-Bengochea's head.

30. Garcia-Bengochea was eventually beaten unconscious by the onslaught of kicks, knees, and other attacks by the officers.

31. Garcia-Bengochea was unconscious for between 30–40 minutes.

32. In the time that Garcia-Bengochea was unconscious, the officers caused Garcia-Bengochea to be transported to LDS Hospital in Salt Lake City, Utah.

33. Garcia-Bengochea received emergency medical care for the injuries caused by the officers.

34. As a result of the officer's attacks, Garcia-Bengochea suffered the following injuries:

   a. Fracture of the lateral wall of the left orbit.
   b. Comminuted fracture of the orbital wall.
   c. Fracture of the lamina papyracea.
   d. Comminuted fracture of the maxillary sinus involving the posterior wall, lateral wall, anterior wall, and medial wall.
   e. Fracture on the base of the nasal septum.
   f. Nondisplaced fracture of the posterior wall of the left maxillary sinus.
   g. Nondisplaced nasal bone fracture at the tip of the nasal bones.
   h. Bilaterally fractured Pterygoid.
   i. Soft tissue gas in the face and head.
   j. Facial laceration.
   k. Facial abrasion.
   l. Taser wounds.
   m. Abrasions on arms and legs.

35. Officer Archuleta signed Garcia-Bengochea's intake paperwork as his temporary caregiver. **Ex. D**.

36. Some or all of the actions of Defendants Officers Archuleta and Officers Doe 1–3 were the result of willful and malicious conduct and/or manifested a knowing and reckless indifference toward, and a disregard of the rights of others.

**FIRST CLAIM FOR RELIEF**
(Violation of Civil Rights, 42 U.S.C. § 1983 – Officer Archuleta and Officers Doe 1–3)

37. Plaintiff incorporates here by reference all other allegations contained in this Complaint, as if fully set forth herein.

38. Upon information and belief, at all relevant times, Defendants Officer Archuleta and Officers Doe 1–3 were employed as police officers with the SLCPD or the Utah Department of Corrections.

39. At all times relevant hereto and in performance of the acts set forth herein, Defendants Officer Archuleta and Officers Doe 1–3 acted under color of state law.

40. At all times relevant hereto and in performance of the acts set forth herein, Defendants Officer Archuleta and Officers Doe 1–3 actively and personally caused the violation of Plaintiff's constitutional rights.

41. Defendants Officer Archuleta and Officers Doe 1–3 conduct as alleged herein subjected Plaintiff to the deprivation of his Fourth, Eighth, and Fourteenth Amendment to the United States Constitution to be free from unreasonable or excessive force.

42. Defendants Officer Archuleta and Officers Doe 1–3 used unreasonable excessive force against Garcia-Bengochea without justification, intruding on the Garcia-Bengochea's interests protected by the Fourth, Eighth, and Fourteenth Amendment, and deprived Plaintiff of this liberty without due process of the law.

43. The police officers never told Garcia-Bengochea that he was under arrest nor facing arrest during the August 18, 2017 incident.

44. Defendants Officer Archuleta and Officers Doe 1–3 should have been trained in methods to achieve law enforcement objectives without inflicting injury or violating Constitutional rights.

45. Defendants Officer Archuleta and Officers Doe 1–3's misconduct directly and proximately caused Garcia-Bengochea to suffer extreme injury, including bodily injury, pain and suffering, shock, emotional distress, and humiliation.

46. Wherefore, Plaintiff requests relief, in an amount to be determined at trial in excess of $2,000,000.00, plus interest and attorney's fees for Plaintiff's general, compensatory, consequential, and punitive damages resulting from Defendants' violation of Plaintiff's civil rights.

**SECOND CLAIM FOR RELIEF**
(Violation of Civil Rights, 42 U.S.C. § 1983 – Salt Lake City Corp. and Chief Mike Brown *or* Utah Department of Corrections, Rollin Cook, and Brian Nielson)

47. Plaintiff incorporates here by reference all other allegations contained in this Complaint, as if fully set forth herein.

48. Upon information and belief Defendants Salt Lake City, Corp. and Chief Mike Brown (jointly "Salt Lake City") knowingly and with gross negligence, maintained, permitted, and ratified policies and customs that allowed the occurrence of the types of wrongs set forth hereinabove, in deliberate indifference to the constitutional rights of citizens.

49. Upon information and belief Defendants Utah Department of Corrections, Rollin Cook, and Brian Nielson (jointly "Department of Corrections") knowingly and with gross negligence, maintained, permitted, and ratified policies and customs that allowed the occurrence of the types of wrongs set forth hereinabove, in deliberate indifference to the constitutional rights of citizens.

50. Under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), the Supreme Court held that a local government may be sued for § 1983 violations "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."

51. Defendants Salt Lake City at all relevant times had the ability to influence SLCPD's policy and custom.

52. Defendants Department of Corrections at all relevant times had the ability to influence the Utah Department of Corrections's policy and custom.

53. Defendants Salt Lake City or Department of Corrections hired and provided continued employment to Officer Archuleta and Officers Doe 1–3 as tortfeasors.

54. Further, Defendants Salt Lake City or Department of Corrections failed to create policy or custom that would protect the constitutional rights of Salt Lake City's citizenry.

55. In particular, Defendants Salt Lake City or Department of Corrections failed to create policy or custom that forbade Officer Archuleta and Officers Doe 1–3 from tasing Garcia-Bengochea without any warning.

56. Further, Defendants Salt Lake City or Department of Corrections failed to create policy or custom that forbade Officer Doe 1 from body slamming Garcia-Bengochea's limp body into the ground face first.

57. Finally, Defendants Salt Lake City or Department of Corrections failed to create policy or custom that forbade Officer Archuleta and Officers Doe 1–3 from kicking and kneeling on Garcia-Bengochea well after he had been beaten and tased into submission.

58. Upon information and belief, Defendants Salt Lake City or Department of Corrections failed to provide the officers referred to herein with training in methods to achieve law enforcement objectives without inflicting injury or violating constitutional rights.

59. Further, Defendants Salt Lake City or Department of Corrections's failure to properly investigate allegations of excessive force contributed to a culture within the SLCPD that encouraged the officers' treatment of Garcia-Bengochea.

60. Upon information and belief, the customs and policies of the SLCPD or Department of Corrections were the moving force behind the violation of Garcia-Bengochea's rights.

61. Wherefore, Plaintiff requests relief, in an amount to be determined at trial in excess of $2,000,000.00, plus interest and attorney's fees for Plaintiff's general, compensatory, consequential, and punitive damages resulting from Defendants' violation of Plaintiff's civil rights.

### THIRD CLAIM FOR RELIEF
(Unnecessary Rigor, UTAH CONST. Article I, Section 9 – All Defendants)

62. Plaintiff incorporates here by reference all other allegations contained in this Complaint, as if fully set forth herein.

63. While in their custody, Defendants were responsible for Garcia-Bengochea's well-being.

64. Garcia-Bengochea was subdued by the first taser attack.

65. Despite the fact that Garcia-Bengochea was subdued, Officer Archuleta and Officers Doe 1–3 proceeded to body slam, kick, knee, and otherwise brutalize Garcia-Bengochea until he was fully unconscious.

66. The officers were deliberately indifferent to Garcia-Bengochea's safety.

67. Defendants Salt Lake City or Department of Corrections failed to promulgate policies and customs to ensure the safety of individuals in custody.

68. Defendants Salt Lake City or Department of Corrections encouraged its officers to engage in similar safety risks by failing to train and/or discipline its officers for similar incidents.

69. Defendants Salt Lake City or Department of Corrections caused Garcia-Bengochea to suffer his injuries insofar as they developed and administered policies or customs that allowed individuals in custody to be put at unreasonable risk of injury.

70. The policy and customs developed and administered by Defendants Salt Lake City or Department of Corrections denied Garcia-Bengochea reasonable safety under Article I, Section 9 of the Utah Constitution.

71. Defendant officers' actions were unjustifiable, demonstrating their deliberate indifference towards and wanton infliction of pain upon Garcia-Bengochea.

72. Defendant officers' actions towards Garcia-Bengochea were unrelated to public or officer safety and unrelated to any other societal justification.

73. Defendant officers' actions towards Garcia-Bengochea were unnecessary.

74. Defendant officers' actions unjustifiably caused Garcia-Bengochea serious and debilitating injury.

75. Wherefore, Plaintiff requests relief, in an amount to be determined at trial in excess of $2,000,000.00, plus interest and attorney's fees for Plaintiff's general, compensatory, consequential, and punitive damages resulting from Defendants' violation of Plaintiff's civil rights.

**FOURTH CLAIM FOR RELIEF**
(Battery – All Defendants)

76. Plaintiff incorporates here by reference all other allegations contained in this Complaint, as if fully set forth herein.

77. Officers Archuleta and Does 1–3 acted with the intent of causing a harmful or offensive touching to the person of Garcia-Bengochea when the officers:

      a. Tased Garcia-Bengochea with no warning.

      b. Officer Doe 1 body slammed Garcia-Bengochea face first into the ground.

      c. Officers Doe 1–3 kicked, kneed, and otherwise battered Garcia-Bengochea.

78. The Defendant officers did so without legal justification.

79. Garcia-Bengochea did not pose a threat to the public or the officers.

80. The officers engaged in the above-stated harmful touching while working for either the SLCPD or the Utah Department of Corrections.

81. The officers engaged in the above-stated harmful touching in furtherance of their employment.

82. The Defendant officers are directly liable for the battery, and the Defendants Salt Lake City or Department of Corrections are vicariously liable for the battery.

83. Wherefore, Plaintiff requests relief, in an amount to be determined at trial in excess of $2,000,000.00, plus interest and attorney's fees for Plaintiff's general, compensatory, consequential, and punitive damages resulting from Defendants' violation of Plaintiff's civil rights.

## JURY DEMAND

Plaintiff requests that this matter be tried to and determined by a jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendant as follows:

A. Economic and noneconomic damages as provided under applicable law and deemed appropriate by a jury;

B. Attorney fees and litigation expenses pursuant to 42 U.S.C. § 1988 and as provided under applicable law;

      C.      Punitive damages against Defendants as provided under applicable law and to the extent deemed appropriate by a jury;

      D.      Costs as provided under applicable law;

      E.      Pre-Judgment and post-judgment interest as provided under applicable law; and

      F.      For such other and further relief as the Court deems just and proper.

//

DATED this 18th day of August 2021.

      **SUMSION BUSINESS LAW**

      */s/ Steven R. Sumsion*
      Steven R. Sumsion
      *Attorney for Plaintiff*