IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MATTHEW GARCIA-BENGOCHEA,<br><br>Plaintiff,<br><br>v.<br><br>UTAH DEPARTMENT OF CORRECTIONS, et al.,<br><br>Defendants. | **MEMORADUM DECISION AND ORDER**<br><br>Case No. 2:21-cv-00536-RJS-CMR<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Cecilia M. Romero |

Before the court is Defendants Daniel Hampton, Dan Chesnut, and Eldon Hamelin's Motion for Summary Judgment.[1] Defendants—Adult Probation and Parole (AP&P) agents with the Utah Department of Corrections (UDOC)—invoke qualified immunity in response to Plaintiff Matthew Garcia-Bengochea's claim they violated his Fourth, Eighth, and Fourteenth Amendment rights.[2] For the reasons stated, the court GRANTS Defendants' Motion. Also before the court is Defendants' Motion in Limine.[3] That Motion is DENIED as moot.[4]

## BACKGROUND

The following facts are drawn from the parties' summary judgment briefing and attached exhibits. Only those facts relevant to resolution of the present Motion are included. As required

---

[1] ECF 69, *Defendants' Motion for Summary Judgment*.

[2] *Id.* at 1.

[3] ECF 76, *Motion in Limine to Exclude Richard Bryce's Testimony and Opinions*.

[4] Defendants' Motion in Limine seeks to exclude the report, opinions, and testimony of Garcia-Bengochea's expert, Richard Bryce. *See* ECF 76 at 2. However, the court need not consider the evidence's admissibility because, even accepting the evidence, Garcia-Bengochea fails to make an adequate legal showing in opposition to Defendants' Motion for Summary Judgment.

1

at summary judgment, the court views the facts in the light most favorable to Garcia-Bengochea, the non-moving party, and makes reasonable inferences in his favor.[5]

**Garcia-Bengochea Violates His Parole Agreement**

In March 2013, a Utah state court sentenced Garcia-Bengochea to zero to five years in prison for a felony drug charge.[6] On three subsequent occasions the Utah Board of Pardons released Garcia-Bengochea on parole, Garcia-Bengochea violated his parole terms, and authorities returned Garcia-Bengochea to prison.[7]

In July 2017, the Board released Garcia-Bengochea on parole a fourth time.[8] Garcia-Bengochea signed a parole agreement in which he agreed not to flee, agreed to enter a halfway house until he had an approved residence, and acknowledged the Board could issue a warrant for his arrest if he violated these terms.[9] Nevertheless, Garcia-Bengochea soon absconded from the halfway house where he was residing.[10] The Board issued a warrant for his arrest.[11]

---

[5] *See Wilkins v. City of Tulsa*, 33 F.4th 1265, 1269–70 (10th Cir. 2022). Defendants' summary judgment briefing disputes several of the facts described below. *Compare* ECF 83, *Memorandum Opposing Defendants' Motion for Summary Judgement* at 2–5 *and* ECF 88, *Defendants' Reply in Support of Their Motion for Summary Judgment* at 3–9. However, the court need not resolve these disputes because, in any case, Garcia-Bengochea fails to make an adequate legal showing in opposition to Defendants' Motion for Summary Judgement.

[6] *See State v. Garcia-Bengochea*, No. 131600017 (6th Dist. Ct. Utah Mar. 28, 2013); *see also* ECF 69-1, *Exhibit A: Garcia-Bengochea Deposition Transcript* at 153:7–19.

[7] ECF 69-1 at 26:20–29:12.

[8] *Id.* at 77:16–21; ECF 69-2, *Exhibit B: Parole Agreement* at 1.

[9] ECF 69-2 at 1–2.

[10] *Id.* at 1; ECF 69-1 at 77:16–21.

[11] ECF 69-3, *Exhibit C: Board Warrant*.

*Salt Lake City Police Officers Encounter Garcia-Bengochea*

Shortly after midnight on August 17, 2017, two Salt Lake City police officers responded to a trespassing call at a 7-Eleven in Salt Lake City, Utah.[12] They encountered three individuals, one of whom was Garcia-Bengochea, and asked the individuals to identify themselves.[13]

Garcia-Bengochea, knowing he was in violation of his parole agreement and seeking to avoid arrest, lied about his identity.[14] He told the officers he did not have a driver's license and identified himself as his brother, James Henry Garcia-Bengochea.[15] After the officers were unable to verify his identity, Garcia-Bengochea accessed his brother's Facebook page and claimed it as his own.[16] The officers suspected the page did not belong to Garcia-Bengochea, but they let him and the others go.[17]

Thereafter, the officers continued investigating Garcia-Bengochea's identity. They re-accessed his brother's Facebook page, searched for friends with the same last name, and located a profile for Matthew Garcia-Bengochea.[18] They ran the name in their records database, located a matching Utah driver's license profile, and positively identified Garcia-Bengochea.[19]

---

[12] ECF 69-6, *Exhibit F: Salt Lake City Police Department Report* at 4; ECF 69-7, *Exhibit G: Jacob Barker Declaration* ¶¶ 6, 9–10.

[13] ECF 69-1 at 23:20–24:3; ECF 69-6 at 4; ECF 69-7 ¶¶ 9–10; ECF 69-9, *Exhibit I: Fitisumanu Bodycam Footage* at 00:34–02:00; ECF 69-10, *Exhibit J: Fitisumanu Bodycam Footage Transcript* at 3:19–24; ECF 69-11, *Exhibit K: Barker Bodycam Footage* at 01:48–01:56.

[14] ECF 69-1 at 24:16–26:13, 31:5–9, 89:2–6; ECF 69-6 at 4; ECF 69-7 ¶ 10; ECF 69-9 at 01:15–02:00; ECF 69-10 at 1:15–24; ECF 69-11 at 01:30–01:37, 02:17–03:53; ECF 69-12, *Exhibit L: Barker Bodycam Footage Transcript* at 3:1–5:6.

[15] ECF 69-1 at 24:16–26:13, 31:5–9, 89:2–6; ECF 69-6 at 4; ECF 69-7 ¶ 10; ECF 69-9 at 01:15–02:00; ECF 69-10 at 1:15–24; ECF 69-11 at 01:30–01:37, 02:17–03:53; ECF 69-12 at 3:1–5:6.

[16] ECF 69-1 at 31:24–32:2; ECF 69-7 ¶¶ 11–13; ECF 69-9 at 02:00–05:41, 11:00–11:10, 12:30–15:43; ECF 69-10 at 5:3–9, 9:9–11, 10:7–11:19; ECF 69-11 at 04:20–16:33, 17:01–19:36; ECF 69-12 at 5:7–12:4.

[17] ECF 69-6 at 4; ECF 69-7 ¶¶ 14–15; ECF 69-11 at 18:30–21:20; ECF 69-12 at 11:17–12:16, 13:2–18.

[18] ECF 69-6 at 4; ECF 69-7 ¶¶ 16–17.

[19] ECF 69-6 at 4; ECF 69-7 ¶ 17.

Concurrently, they learned there was a warrant out for his arrest.[20]  The officers searched the surrounding area for Garcia-Bengochea without success.[21]

### *Defendants Locate Garcia-Bengochea*

The following evening, Defendants attended a community law enforcement meeting where they were briefed on the officers' encounter with Garcia-Bengochea.[22]  They learned he was a parole fugitive, received a description of his appearance, and were advised to look out for him.[23]

Around 4:30 a.m. the next morning, August 18, 2023, Defendants were patrolling near the officers' earlier interaction with Garcia-Bengochea when they spotted an individual matching his description.[24]  Defendants pulled into a nearby parking lot, approached the individual, and told him: "We know who you are.  You gave that officer a fake name.  What's your name?"[25]  Garcia-Bengochea, recognizing Defendants as AP&P officers, responded: "If you know who I am, then you know my name. You tell me what my name is."[26]  Subsequently, Garcia-Bengochea again identified himself as James Henry Garcia-Bengochea.[27]

---

[20] ECF 69-6 at 4; ECF 69-7 ¶ 18.

[21] ECF 69-6 at 4; ECF 69-7 ¶ 19.

[22] ECF 69-4, *Exhibit D: Hamelin Deposition Transcript* at 8:22–9:25, 22:5–11, 36:21–37:20; ECF 69-13, *Exhibit M: Hampton Deposition Transcript* at 7:6–10:3; ECF 69-14, *Exhibit N: Chesnut Deposition Transcript* at 17:1–21.

[23] ECF 69-4 at 8:22–9:25, 22:5–11, 36:21–37:20; ECF 69-13 at 7:6–10:3; ECF 69-14 at 17:1–21.

[24] ECF 69-4 at 6:17–7:4, 11:2–7; ECF 69-13 at 10:18–11:9; ECF 69-14 at 10:17–20; ECF 69-15, *Exhibit O: Chesnut Declaration* ¶¶ 4, 11, 13.

[25] ECF 69-1 at 16:15–17, 21:9–17, 22:20–25, 23:2–6, 32:8–17, 134:22–135:4; ECF 69-4 at 6:25–7:4, 11:8–25, 23:1–9; ECF 69-13 at 12:1–4, 43:18–20; ECF 69-15 ¶¶ 14–16.

[26] ECF 69-1 at 22:6–1, 23:1–5, 32:8–17.

[27] ECF 69-1 at 24:16–18, 26:3–8; ECF 69-4 at 7:2–4; ECF 69-15 ¶ 16.

Defendants, believing the individual was the parole fugitive they were briefed on, advised Garcia-Bengochea they were detaining him until they could verify his identity.[28] Defendants confirmed his identity as Matthew Garcia-Bengochea less than five minutes later.[29]

### *Garcia-Bengochea Leaves the Scene and Defendants Follow*

Thereafter, Garcia-Bengochea "[grew] tired of feeling harassed and [] wanted to exit the situation."[30] He asked Defendants whether he was under arrest, they said "[n]o, but we're talking to you," he announced his intention to leave the interaction, Defendants said nothing in response, and he walked away.[31] Defendants, led by Hampton, followed him.[32]

Garcia-Bengochea traveled into the street, between 20 and 50 feet away, and Hampton became concerned Garcia-Bengochea would reach a dark neighborhood across the street before he could apprehend him.[33] Accordingly, he deployed his Taser in Garcia-Bengochea's direction.[34] Two Taser prongs penetrated Garcia-Bengochea's back, causing his body to experience neuro-muscular incapacitation and fall face-first onto the street.[35]

### *Defendants Arrest Garcia-Bengochea*

After Garcia-Bengochea fell to the ground, an unidentified officer picked him up and "body slammed" him to the ground, before other unidentified officers began kicking his upper

---

[28] ECF 69-1 at 32:13–25, 63:1–67:20; ECF 69-4 at 7:4–16, 12:21–25, 37:25–38:2; ECF 69-13 at 12:1–9, 13:14–14:3, 15:21–16:8; ECF 69-15 ¶¶ 18–22; ECF 69-19, *Exhibit S: Initial Contact Report* at 2–3.

[29] ECF 69-1 at 33:1–5; ECF 69-4 at 7:17–21, 12:3–10, 13:4–21, 38:12–18; ECF 69-13 at 12:23–13:7, 48:16–22; ECF 69-15 ¶¶ 23–27.

[30] ECF 69-1 at 32:21–22.

[31] *Id.* at 32:21–33:11, 35:5–9.

[32] ECF 69-4 at 7:21–8:2, 17:1–12; ECF 69-13 at 16:14–20; ECF 69-15 ¶ 29.

[33] ECF 69-1 at 33:25–34:22; ECF 69-16, *Exhibit P: Hampton Declaration* ¶¶ 6–9, 13.

[34] ECF 69-4 at 8:3–4; ECF 69-13 at 38:25–39:5, 48:16–49:6, 56:18–57:6; ECF 69-15 ¶ 30; ECF 69-16 ¶ 13.

[35] ECF 69-1 at 34:25–35:4, 131:19–133:5; ECF 69-4 at 8:1–8; ECF 69-13 at 18:3–8; ECF 69-15 ¶ 31.

body and ordering him to "[s]top resisting."[36]  Subsequently, Defendants dispatched medical personnel, who, upon arriving at the scene, provided Garcia-Bengochea medical care and transported him to the hospital.[37]  Hospital staff provided additional medical care before authorities transferred him to prison.[38]

## PROCEDURAL HISTORY

In August 2021, Garcia-Bengochea filed the present action in state court, naming UDOC, former UDOC Executive Director Rollin Cook, former UDOC Executive Director Brian Nielson, Salt Lake City Corporation, Salt Lake City Police Chief Mike Brown, and Salt Lake City Police Officer Andrew Archuleta as Defendants.[39]  Defendants removed the case to this court,[40] and Garcia-Bengochea voluntarily dismissed his claims against Salt Lake City Corporation, Brown, and Archuleta.[41]

After the remaining Defendants filed a Motion to Dismiss the Complaint,[42] Garcia-Bengochea filed an Amended Complaint, adding Hampton, Chesnut, and Hamelin as Defendants and stating three claims for relief.[43]  The first claim alleged Hampton, Chesnut, and Hamelin violated 42 U.S.C. § 1983 by depriving Garcia-Bengochea "of his Fourth, Eighth, and Fourteenth Amendment [rights] to be free from unreasonable or excessive force."[44]  Garcia-Bengochea

---

[36] ECF 69-1 at 40:9–12, 43:8–44:12, 47:1–49:13, 52:12–14, 130:24–131:4, 134:10–21, 167:18–25.

[37] ECF 69-4 at 19:3–6, 28:16–29:7; ECF 69-13 at 22:16–23, 24:15–25:2, 26:18–23.

[38] ECF 69-1 at 75:15–17; ECF 69-4 at 19:3–6, 28:16–29:7; ECF 69-13 at 22:16–33, 24:15–25:2, 26:18–23. 28:1–6.

[39] ECF 4-3, *Exhibit: Complaint*.

[40] ECF 4, *Notice of Removal to Federal Court*.

[41] ECF 27, *Order Granting Voluntary Dismissal*.

[42] ECF 28, *Motion to Dismiss*.

[43] ECF 29, *Amended Complaint*.

[44] *Id.* at 6–7.

made the claim against the officers in their individual and official capacities.[45] The second claim similarly alleged Cook and Nielson violated § 1983.[46] The third claim alleged battery by UDOC, Cook, Nielson, Hampton, Chesnut, and Hamelin.[47]

Defendants moved to dismiss Garcia-Bengochea's first claim against Hampton, Chesnut, and Hamelin in their official capacities and his second and third claims in their entirety.[48] At a hearing on July 7, 2022, the court granted Defendants' request, preserving only Garcia-Bengochea's § 1983 claim against Hampton, Chesnut, and Hamelin in their individual capacities.[49]

Defendants filed the present Motion for Summary Judgment on October 24, 2023, arguing the court should grant summary judgment on Garcia-Bengochea's remaining claim.[50] The Motion is now fully briefed and ripe for review.[51]

## LEGAL STANDARDS

Typically, a court may grant summary judgment only when a movant establishes "there is no genuine issue of material fact" and they are "entitled to judgment as a matter of law."[52] Factual disputes are genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" and facts are material when they "might affect the outcome of

---

[45] *Id.* at 1, 6–7.

[46] *Id.* at 8–10.

[47] *Id.* at 10–11.

[48] ECF 34, *Defendants' Partial Motion to Dismiss* at 1.

[49] ECF 40, *Minute Order*.

[50] *See* ECF 69.

[51] *See* ECF 83 (Garcia-Bengochea's Response); ECF 88 (Defendants' Reply).

[52] Fed. R. Civ. P. 56(a); *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016).

the suit."[53] Once the movant makes the required showing, the burden shifts to the nonmovant to "designate specific facts showing there is a genuine issue for trial."[54]

This standard varies when a plaintiff brings a claim under § 1983 and a defendant invokes qualified immunity in response.[55] Section 1983 permits individuals to bring damages claims against public officials for violating "federal rights elsewhere conferred," such as constitutional rights.[56] Qualified immunity limits § 1983's effect by presumptively shielding public officials from such claims unless a plaintiff shows a defendant's conduct violated a clearly established right.[57]

Accordingly, a plaintiff responding to a defendant's motion for summary judgment based on qualified immunity must satisfy a two-part test.[58] First, the plaintiff must show "the facts, taken in the light most favorable to the party asserting the injury," demonstrate a defendant violated the plaintiff's federal right.[59] Second, the plaintiff must show "the right in question was 'clearly established' at the time of the violation."[60] A court may address these two prongs in any order,[61] and if a plaintiff fails to satisfy either prong, the court must find a defendant entitled to

---

[53] *Bird v. West Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[54] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted).

[55] *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008).

[56] *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979).

[57] *Tolan v. Cotton*, 572 U.S. 650, 654 (2014). *See also Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013) ("[P]ublic officials enjoy qualified immunity in civil actions that are brought against them in their individual capacities and that arise out of the performance of their duties" because, absent such immunity, § 1983 claims "could lead to undesirable *ex ante* effects: reticence of officials in carrying out important public functions and, perhaps worse, a general disaffection with public service, rooted in the calculation that its costs simply outweigh its benefits.").

[58] *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 877 (10th Cir. 2014).

[59] *Tolan*, 572 U.S. at 655–56 (internal quotation marks, citations, and alterations omitted).

[60] *Id.* at 656. Garcia-Bengochea argues it is not his burden to show Defendants violated a clearly established right, but he provides no legal support for his position. *See* ECF 83 at 7, 11.

[61] *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019).

qualified immunity.[62]  "If, and only if, the plaintiff meets [the] two-part test does a defendant then bear the traditional burden of the movant for summary judgment . . . ."[63]

## ANALYSIS

Garcia-Bengochea's sole remaining cause of action is his § 1983 claim Defendants violated his Fourth, Eighth, and Fourteenth Amendment rights "to be free from unreasonable or excessive force."[64]  Defendants argue the court should grant summary judgment in their favor because Garcia-Bengochea may bring his claim under the Fourth Amendment only and qualified immunity shields Defendants from such a claim.[65]

As a result, the court does not begin its analysis of Defendants' Motion for Summary Judgment by resolving whether Defendants' evidence shows there is no genuine issue of material fact for the jury.  Rather, the court begins by determining which constitutional right or rights apply to Garcia-Bengochea's claim.  Then, the court considers whether Garcia-Bengochea meets his burden to present evidence demonstrating Defendants violated a right which was clearly established at the time of his encounter with Defendants.

Because the court can only analyze Garcia-Bengochea's § 1983 claim under the Fourth Amendment, and because Garcia-Bengochea does not meet his burden to show Defendants

---

[62] *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th 2001).

[63] *Clark*, 513 F.3d at 1222 (citations omitted); *see also Medina*, 252 F.3d at 1128.

[64] ECF 29 ¶ 40; *see also* ECF 40.

[65] *See* ECF 69 at 15–16.

violated a clearly established Fourth Amendment right, the court concludes Defendants are entitled to qualified immunity and grants summary judgment.[66]

### I. The Court Must Analyze Garcia-Bengochea's § 1983 Claim Under The Fourth Amendment.

"[The] first task in any [§] 1983 suit alleging a constitutional violation is 'to isolate the precise constitutional violation with which [the defendant] is charged.'"[67]  "Excessive force claims can be maintained under the Fourth, Fifth, Eighth, *or* Fourteenth Amendment—all depending on where the [plaintiff] finds himself in the criminal justice system . . . ."[68]  "When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment protection against unreasonable searches and seizures."[69]  When a plaintiff is a "prisoner[] already convicted of a crime" who alleges "their *punishments* involve excessive force," the federal right at issue is the Eighth Amendment protection against "cruel and unusual punishments."[70]  "And when neither the Fourth nor Eighth Amendment applies," because "the plaintiff finds himself in the criminal justice system somewhere between the two stools of an initial seizure and post-conviction punishment," the right at issue is either the Fifth or Fourteenth Amendment protection against "arbitrary governmental action, taken without due process."[71]

---

[66] In support of their position qualified immunity bars Garcia-Bengochea's § 1983 claim, Defendants argue "(1) Hampton's use of the Taser was objectively reasonable; (2) Hamelin and Chesnut did not tase Garcia-Bengochea and did not have a duty to intervene; (3) Garcia-Bengochea [did] not have a constitutional right to leave a scene after being told he was being detained or to avoid arrest on a parole warrant; and (4) Garcia-Bengochea cannot attribute any specific act to any specific officer." *Id.* at 14–15.  The court bases its conclusion on Defendants' third argument and offers no opinion on Defendants' remaining arguments.

[67] *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010) (quoting *Baker*, 443 U.S. at 140) (third alteration in original).

[68] *Id.* (emphasis added).

[69] *Wilkins*, 33 F.4th at 1272–73 (quoting *Tolan*, 572 U.S. at 656); *see also Porro*, 624 F.3d at 1325.

[70] *Porro*, 624 F.3d at 1325–26.

[71] *Id.* at 1326.  The Fifth Amendment's due process guarantee applies when a plaintiff complains against federal officials, and the Fourteenth Amendment's due process guarantee applies when a plaintiff complains against state officials.  *See id.*

10

For example, the Fourteenth Amendment applies when a state official uses excessive force against an "arraigned pre-trial detainee."[72]

In the present case, Garcia-Bengochea alleges Defendants used excessive force when they stopped him to investigate his identity as a parole fugitive and effectuate his arrest.[73] He does not allege Defendants used excessive force against him as officers subjecting a prisoner to punishment, as officers in control of an arraigned pre-trial detainee, or in any other post-arrest circumstances. As a result, Garcia-Bengochea's § 1983 claim is properly evaluated only as an alleged violation of his Fourth Amendment rights.

Garcia-Bengochea's unsupported invocation of his Eighth and Fourteenth Amendment rights does not alter this conclusion.[74] Garcia-Bengochea may not simply allege a violation of each Amendment "without suggesting which one he thinks best applies to his case or offering any further explanation."[75]

## II. Garcia-Bengochea Does Not Meet His Burden to Show Defendants Violated A Clearly Established Right.

Having determined Garcia-Bengochea may bring his § 1983 claim only under the Fourth Amendment, the court considers whether he meets his burden to overcome Defendants' presumption of qualified immunity. In doing so, the court exercises its discretion to bypass the

---

[72] *Id.*

[73] *See* ECF 29 ¶¶ 11–30.

[74] ECF 83 at 7.

[75] *Porro*, 624 F.3d at 1325.

first prong of the qualified immunity analysis—whether Defendants violated Garcia-Bengochea's Fourth Amendment rights—and proceed directly to the second prong.[76]

The second prong of the qualified immunity analysis requires Garcia-Bengochea to demonstrate Defendants' conduct violated a clearly established Fourth Amendment right.[77] "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates the law.'"[78] "Under this demanding standard, the alleged violation must have a sufficiently clear foundation in then-existing precedent . . . ."[79] Consequently, a plaintiff alleging a defendant used excessive force in violation of the Fourth Amendment must "put forth Supreme Court or Tenth Circuit precedent, or the weight of authority from other circuits," demonstrating an objective officer in the defendant's position would have been "on notice that he was violating [a] plaintiff's . . . rights."[80] Because "[c]laims of excessive force turn very much on the facts of each case," this precedent must "squarely govern[] the specific facts at issue."[81]

Garcia-Bengochea does not identify any cases of any kind which would put Defendants on notice their particular conduct in the circumstances of the case violated a Fourth Amendment right. Nor does he attempt to define or outline the conduct and circumstances relevant to this

---

[76] *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."); *Hunt v. Bd. of Regents of Univ. of N.M.*, 792 F.App'x 595, 600–01 (2019) (quoting *Kerns v. Bader*, 663 F.3d 1173, 1180–81 (10th Cir. 2011)) ("[W]e have found addressing both prongs 'should be the exception' because of the doctrine of constitutional avoidance.").

[77] *See Cummings*, 913 F.3d at 1239–40.

[78] *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)); *see also Heard v. Dulayev*, 29 F.4th 1195, 1203 (10th Cir. 2022).

[79] *Heard*, 29 F.4th at 1203 (internal quotation marks and alterations omitted).

[80] *Emmett v. Armstrong*, 973 F.3d 1127, 1137 (10th Cir. 2020) (internal quotation marks and alterations omitted).

[81] *Lewis v. City of Edmond*, 48 F.4th 1193, 1199 (10th Cir. 2022) (internal quotation marks omitted).

inquiry. Absent any such effort, Garcia-Bengochea offers no basis for the court to analyze whether Defendants' particular conduct violated a clearly established Fourth Amendment right. Thus, even assuming Defendants violated the Fourth Amendment by tasing and forcefully subduing a non-threatening parole fugitive who lied to police about his identity and walked away from an investigatory stop, Garcia-Bengochea does not "carry the burden assigned him by law."[82]

Garcia-Bengochea does not resolve this shortcoming by challenging Defendants' analysis of the clearly established right prong. For example, Garcia-Bengochea's argument that "Defendants do not dispute" the existence of his "clearly [] established constitutional rights" under "the Fourth . . . Amendment[]" misinterprets the term "clearly established right" as it is used in the qualified immunity context.[83] Although Defendants do not dispute the Fourth Amendment's basic meaning and applicability, they thoroughly argue Garcia-Bengochea did not have a specific Fourth Amendment right to "evade arrest or leave the scene of an investigatory detention" under the circumstances of the case.[84] Likewise, Garcia-Bengochea argues Defendants err by relying on genuinely disputed facts in their assessment of whether they violated his clearly established rights.[85] But it is Garcia-Bengochea who must show Defendants violated his clearly established Fourth Amendment rights. Defendants do not excuse him from this burden by themselves interpreting the case and putting forth relevant precedent. Nor do they

---

[82] *Smith v. McCord*, 707 F.3d 1161 (10th Cir. 2013) (upholding a district court's decision to grant defendants qualified immunity when a plaintiff's attorney "didn't even try to meet" either prong of the qualified immunity analysis); *see also Rojas v. Anderson*, 727 F.3d 1000, 1003–05 (10th Cir. 2013) (upholding a district court's decision to grant defendants qualified immunity when a plaintiff "failed to meet his burden on 'the legal qualified immunity question'" such that the question of whether a genuine issue of material fact existed was immaterial).

[83] ECF 83 at 7.

[84] *See* ECF 69 at 25–27; ECF 88 at 14–15.

[85] *See* ECF 69 at 27.

force Garcia-Bengochea into the untenable position of "adopt[ing] [their] version of the facts."[86] If Garcia-Bengochea did not agree with Defendants' characterization of the case, it was his duty to articulate a competing, fact-based statement of the Fourth Amendment question at issue, locate relevant precedent, and present that precedent to the court.[87]

Because Defendants are entitled to qualified immunity against Garcia-Bengochea's claim they violated his Fourth Amendment Rights, the court must grant summary judgment in favor of Defendants.

## CONCLUSION

For the reasons stated, the court GRANTS Defendants' Motion for Summary Judgment[88] and DENIES Defendants' Motion in Limine[89] as moot. The court directs the Clerk of Court to close the case.

SO ORDERED this 23nd day of April 2024.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[86] *See* ECF 83 at 7, 10–11.

[87] Garcia-Bengochea cites *Tolan* to argue, "[i]n articulating the factual context of the case," the court must believe "the evidence of the nonmovant" and draw "all justifiable inferences in his favor." ECF 83 at 6. The court agrees. "[C]ourts must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions." *Tolan*, 572 U.S. at 657. However, as articulated above, Garcia-Bengochea disputes the facts underlying Defendants' interpretation of the case without directing the court to any other version of events, or any relevant precedent indicating Defendants' particular conduct violated a clearly established right.

[88] ECF 69.

[89] ECF 76.